Case number 255766, the United States of America v. Alexander Laykovich, oral argument not to exceed 15 minutes per side. Mr. Allen, you may proceed for the appellant. Good morning. May it please the Court, I'm Ben Allen with Gatsby, Manning, Lee & Atchison on behalf of the appellant, Alexander Laykovich, I would like to reserve four minutes of my time for rebuttal. In his brief, Mr. Laykovich brought three issues to this Court in his appeal. The first is of first impression to this circuit and is of constitutional significance, that is whether section 922G4, which bars those who have been adjudicated mentally defective or have been committed to a mental institution from possessing firearms. The other two challenges deal with his sentence in this case. I would like to first address the second amendment issue and the question here is really whether this Court chooses to extend the dangerous person analogy utilized in Rahimi and in Williams to section 922G4. As I said, this circuit has yet to do that, the Supreme Court has yet to do that, I'm only aware of one federal circuit to do that and that's United States v. Gould out of the Fourth Circuit. As I explained in my brief, Mr. Laykovich argued that the Court should not extend that analogy to this specific subsection. Of course, Bruin requires the Court to look at several different things. First of all, is Mr. Laykovich of the people to which the second amendment applies? There was some discussion at the district court, however, I think it's pretty clear now that there's not much question here that Mr. Laykovich, a law-abiding citizen in this case, was protected by the second amendment. So I think a lot of the analysis has already been undertaken by Rahimi. Rahimi essentially says you have a right to dispossess those who are considered dangerous and that you don't necessarily need a historical twin. So I would think that your best argument is that there's no historical law dispossessing those with mental illness. But at the same time, there's a long tradition dating back to the founding of this country of limiting the rights of those with mental illness in other ways. So why wouldn't that tradition be relevant? It's not so much a gun-specific tradition, but it's a tradition with respect to mental illness. For instance, regulating how they can dispossess their property, how they can change their property. You have a guardian, perhaps, implemented to protect them. We wouldn't consider that a taking. Why wouldn't that tradition be relevant and perhaps dispositive on this question? Certainly, Judge. And I think we cut directly to the ultimate question here is how does Rahimi play into this subsection? Of course, Rahimi said that you don't have to have a historical twin. But I believe the Rahimi analysis does focus on firearm regulation at the time of the founding. And as I believe the government pointed out in its brief, and I think it's clear, there's not a lot of laws at the time of the founding to address what was an existing problem in that time, which was mental health. The government's pointed to surety laws that deprived people deemed dangerous from their firearms for a temporary period of time. And I think the court's question is what we have. I think, Judge Murphy, your question was will we have these laws? I just don't know that the historical tradition has to be about guns rather than about the historical tradition of regulating those with mental illness. So we have all sorts of limits on their rights, historically. Limits in terms of liberty. So those deemed dangerous could even be locked up. And limits with respect to even how they exercise other rights, such as property interests and other things.  Certainly today, Judge, I mean, there are laws that dispossess the mentally ill from possessing property to be able to do contracts and certainly firearms. So I mean, those would be considered constitutional rights in some ways, I would think. Correct. But I think the court's inquiry really has to focus at the time of the founding. And there's not a lot of discussion in the briefing here as to your question, that is, how did we deprive these individuals of those other rights at the time of the founding? We didn't have many mental asylums or you would lock up, I think the court's point is people deemed dangerous, drunkards, the term escapes you, riding around dangerously. But I think the danger here, and I think Judge Barrett touched on this in her concurrence in Rahimi, and certainly Justice Thomas touched on this in his dissent, is how far do we expand this dangerous person analogy? Obviously, it's been used to uphold subsection G-8, the domestic violence orders. Obviously, it's been used to uphold the felon possession. How far do we expand that? And obviously, the government's arguing that we expand that to G-4. I don't think that necessarily should be the case here because each statute is, each subsection is different, has different requirements, different applications. In the court, every single time, Rahimi, Heller, Bruin has said, we're not engaging in an exhaustive, specific historical analysis of those subsections of 922 G. So I think the court has to look here specifically at the time of the founding. I know it's not trapped in amber. I know the analogy doesn't have to be trapped in amber. But you can't expand this analogy too far. And Justice Thomas certainly touched on that. And Barrett, Justice Barrett, I think you need to try to avoid creating a patchwork of this dangerous analysis to try to cover all of these separate subsections of G-4, try to shoehorn those. But why do you not think it just applies naturally here? There is a historical tradition of if you found that you were having a mental illness, you could be actually imprisoned, not imprisoned in a penal sense, but in a incapacitation sense. And it was temporary. I would think your argument would have more legs if there wasn't an out here. But I think your client could have gone back to the Missouri court and said, my mental illness is now gone. Please give me back my rights. That was certainly an option under the Missouri statute in this case. It does provide for the ability to go back to the court and petition. Doesn't that make that, I mean, you're bringing a facial challenge. So we have to include every conceivable possibility. So it just suggests to me that this is not even a permanent ban. So it's not even like the felon in possession like Williams. Well, I think. It's only a temporary ban. It is a temporary ban only. What separates this subsection, I think, from G8 and G3, is in G8, for example, when that domestic violence order is lifted. And in Kentucky, in most states, I assume that they're temporary. Once that's lifted, there's no action put upon the rights holder, in this case, to go back and obtain their rights. It's automatically restored. The same can be said for the possessing firearms while using controlled substances, if the use stops and presumably that right returns right back to them. In this case, you have a hodgepodge of states, and I would concede the majority of states do allow for it, but not every state, where it puts the onus on the rights holder, in this case, Mr. Leikovich, to come back to the court and jump through a variety of different hoops to try to get their rights back, to which there's no guarantee that those rights are ever restored. Isn't the response to that is that you should do that, then appeal if you think it's been improperly denied, rather than just to possess guns on your way to Fort Knox? Well, again, as the court pointed out, this is a facial challenge. Yeah, but a facial challenge would include all circumstances, including your own. If it's constitutional as applied to the particular party before us, then the facial challenge necessarily fails. Certainly, I agree in a facial challenge. First Amendment weird overbreath. There might be a separate challenge with the way the disability is lifted and the procedures for that, but if we just focus on the time of the initial dispossession following the initial mental dangerousness order, what is the difference between the G8 situation where you have an adjudication that says, this person is a domestic abuser, as a result presents immediate danger to somebody else, and the Supreme Court said, okay to dispossess under the dangerousness framework of Rahimi. Imagine you had the exact same type of adjudication here, and it says this person's a danger to this exact same person because of schizophrenia or some other mental defect. What is the difference as to dangerousness for those two situations? Well, of course, I think it's important and I concede here that there was an adjudication in this case specifically with respect to Mr. Leikovich. As far as difference between the two different subsections, that's G8 and here G4. Just on the dangerousness. And then G8, there's a finding with respect to a specific person. G4, and G4 has two different parts. There's the, if you've been committed to a mental institution or adjudicated mentally defective. That's a general adjudication that due to someone's mental illness that they pose a danger to themselves or others. So that would be, that's a fine difference, but that is a difference between the two statutes. Mr. Leikovich's position and where his argument rests on the facial challenge, and I'm about to run out of time, is that unlike Williams, unlike Rahimi, the court should not in this case extend this analogy in this separate, and it has to engage in a separate historical analysis for each of these sections. I think the court, this court and the Supreme Court have made that clear in every case, that that analogy should not extend as far as G4. If part of the, just to pick up on Judge Murphy's questions, if part of the justification at the founding for incarcerating people who were deemed mentally defective or dangerous was to incapacitate them because there are no weapons in prison, why does the greater kind of not include the lesser with respect to disarmament? Well, I think the problem we've run up against when you're talking about the founding is that the understanding of mental illness at that time is a bit different than it is now. But your point is, you know, if you've got this general disarming of dangerous people, why does that not extend to this case? I would argue that this statute is a bit different than the disarmament at the time of the founding. And for that reason, Mr. Leikovich would certainly argue that 922 G4 is facially unconstitutional. Okay. Thank you. Good morning, and may it please the court. Amanda Wong on behalf of the United States. I'd like to begin where the court left off regarding the historical analogs regarding the imprisonment of the mentally ill at the time of the founding. The analogy there is actually pretty good because the analogs, historical analogs we've cited in our brief, I think that's around pages 11 and 12, discuss imprisoning, they use much cruder language, but lunatics and the like after a finding of that nature. So even at the time of the founding, there was oftentimes a similar finding, whether it was by a justice of the peace or a magistrate that an individual had some sort of condition and needed to be imprisoned. And of course, when we look to Bruin and we look to Rahimi, that's relevant because, of course, the burden on the right at the time of the founding was greater than the burden on the right that it is. Again, this is a facial challenge here with 922 G4, which is just disarmament. So that is a, I think, good comparison here when we're talking about a facial challenge. And it really maps... But it's not clear to me that we accept that the greater includes the lesser in Williams because we did suggest that there has to be some out in Williams that a finding of non-dangerousness. I think, Your Honor, in Williams, the court made that finding because the court was looking at historical analogs that disarmed categories of individuals that legislatures had deemed to be dangerous. And when it was looking to those specific historical analogs, which we also think are relevant here, those analogs provided for a mechanism to have what Williams ended up using as an as-applied challenge. And, of course, Williams actually identified Section 925 C as a possible solution for that kind of analogy. And as we've indicated in our brief, at least with regards to felons, the department has reinvigorated 925 C and 32 felons have been able to reacquire their rights. Now, 925 C is in the process of being restored with regard to 922 G4. It doesn't matter here because it's a facial challenge. And, of course, 33 states are functioning to have those rights restored. Mr. Lankovich himself, I think, as was discussed earlier, could have had his rights restored. So it really is just dependent on this, sort of, I would say, bucket, to get back to your original question, the kind of bucket of historical analogs we're looking at. Williams was primarily looking at disqualification of classes of individuals based on a sort of group finding of dangerousness. We do think that's relevant here and maps nicely also onto 922 G4. Whereas with Rahimi, the court really focused on specifically surety and going armed laws. And that was a little bit different with regard to, I think, specifically, the court noted going armed laws often resulted in imprisonment. And that burden was greater than the burden of disarmament. So it's really just- You don't think those specific examples in Rahimi apply here, though, do you? The surety laws or the going- Because those are more about criminal conduct, I guess. I don't think that's correct, Your Honor. I think specifically the surety laws are relevant here. They may not be the entire end all be all of the topic. But I think they're relevant because the surety laws were really geared towards preventing dangerousness. And so that, I think, is relevant to certain individuals here, like Mr. Lankovich, where there was a specific finding of a potential for dangerousness. A similar process, even, because there was a court finding of a potential for dangerousness. So the surety laws, I do think, are relevant. Whether the going armed laws are, that would be a different story, I think, because that is more a little bit criminal in nature. But of course, 922 G4 itself was not really criminal. I'm sorry, G8 is not itself criminal in nature because it's a restraining order for the domestic violence individual. That is not in itself necessarily criminal. Maybe something criminal has happened, but not every case. There's still just a threat of violence. So just like G8 has not necessarily a criminal component built in, G4 is the same in that regard. There isn't necessarily some criminal conviction baked into the issue. Do you think there's a constitutional floor on what a legislature or state or Congress can define to be dangerous for purposes of the Second Amendment? Your Honor, I'm sure that there is. I'm sure that there has to be some kind of. Do you think that's a physical danger floor, or how would you think about? Your Honor, I hesitate to speak for the department here just because that's not really an issue here. I don't think we have to worry in this case with this particular statute because we have individuals like Mr. Lakovich who have a court finding of dangerousness. And in fact, what if it was an as-applied challenge and it was a court finding of dangerousness based on ADHD? There's some modest mental defects that nobody would think would make them dangerous. Perhaps that would be a closer call. But I think still, if the court is making a finding of potential dangerousness to themselves or others, regardless of what the mental impairment is, I mean, that certainly is something that we wouldn't take lightly because it doesn't really matter what the classification is per se. It's the dangerousness element of the court finding here. This isn't Congress's determination. This is a court looking at an individual and making a fact-finding determination. That's different, I think. Do you think the Second Amendment should set some standard on dangerousness, like a probable cause of harm in the individual case? Or do you think it should just be whatever the underlying court finds with respect to the mental defect is dispositive? Well, I think with this particular statute, there is a mechanism for judicial review once individuals attempt to have their rights restored. So that really, I think, is the out in terms of making sure that there is some kind of judicial review over both the process and the individual's finding of dangerousness or non-dangerousness. And I assume somebody, correct me if I'm wrong, could he have appealed in the state system? That's correct, Your Honor. In order to comply with the federal statute 34 U.S.C. 40915, there are really three requirements that the state system has to have in order to qualify under the statute to make them non-prosecutable under 922G4 going forward. And one of those, as I understand, is judicial review of the decision. So that is the, I think- Does it also set a standard for what should be deemed sufficiently for mental defect purposes? Or is it just- It provides three. There are three requirements, which I'm happy to share. One, it has to allow, the state process has to allow a person to apply relief. Two, it has to be before a court, board, or commission that will determine, consistent with due process, whether the person will not be likely to act in a manner dangerous to public safety. And that granting of the relief would not be contrary to the public interest. And three, it has to provide for de novo judicial review. So all of the state systems where individuals are applying in the 33 states that those exist, there is a mechanism for judicial review. And I think that's an important component. Do you think that's necessary? Or do you think like an as-applied constitutional challenge in the defense of a prosecution is sufficient? Well, Your Honor, I think that there may not, because of this, because those mechanisms are in place, I'm not sure that we even need as-applied challenges because there is this mechanism of review. When the court wrote Williams, it was opining that perhaps if 925C, the statute that should become soon applicable to 922G for the other individuals who were not covered by the 33 states, the court suggested that that process, rather than I'm charged with the crime and then as-applied I'm going to make a challenge, the actual civil process would suffice to ensure that it was constitutional as applied to each individual. So I think that there may not be a necessity here for as-applied challenges once 925C is funded because we have outlets for individuals to show that they are no longer dangerous and to have their rights restored. And then there would be judicial review of those decisions as necessary. And you think there might be like a constitutional overlay on that process insofar as like if a state said, you can have your rights restored if you prove like with, you know, 99.9% certainty that you are not a danger. That's correct, Your Honor. I think there would be review in that process and challenges to that process, not being constitutional in Second Amendment grounds. Your Honor, the only other point that I wanted to make sure, I'm sure the court is aware, but there is an outstanding Supreme Court decision that is in Hermione, which is a different subsection of 922G. We don't anticipate that it will be directly relevant to this case because it is an as-applied challenge in a different subsection of 922G. But we did just want to make the court aware that that decision is, of course, forthcoming and could be being issued at this very moment since decisions are issued on Thursdays. And if that decision is applicable in some way with DICTA, we'd like the opportunity to file a 28J letter or if the court thought it was even more directly on point, any kind of supplemental briefing. But I don't anticipate that it will be dispositive of this case since it is an as-applied challenge and it is a different subsection of the statute. If the court has no further questions, we respectfully request that the court affirm Mr. Lakovich's convictions and sentence and we rest on our briefs. Thank you. Just a few brief points. Judge Hermodore, you asked my colleague with the United States whether there should be a constitutional floor on this issue. I think that's the whole point of our brief is that there should be. It's clear, as I said before, in each of these cases that... But doesn't... I mean, that might be a good argument, but you brought a facial challenge, which would suggest that every application of the statute has to be below the floor in order for your challenge to succeed. My response to that and the crux of our challenge is that it's facially unconstitutional because there's no analogy or analog that would fit the Bruin or Rahimi standard for the subsection. But I understand, obviously, the standard for a facial challenge has to be unconstitutional in every application, which leads me to this point about the 33 states versus 50 states. And whether this is a temporary versus a permanent ban, certainly in the Missouri court, you have the ability to challenge that determination, to appeal it, and then ultimately come back through the statute and go through a variety of procedural hoops to try to get your rights back. And some of those can be onerous. But there are other states where that's not even an option on the state court level. And so in some cases, this can, in fact, operate as a permanent ban. So that's one point I'd like to make in response on rebuttal here. The court has no further questions for me. Mr. Lakovich would submit this in brief and ask that the court reverse his conviction pursuant to conditional guilty plea or in the alternative to remand this matter for resentencing. Thank you. Okay, thank you. I see, Mr. Allen, that you're a court-appointed attorney. We thank you for your service to the court. The case is submitted and the clerk can call the last case. Thank you, Judge.